UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

**CIVIL ACTION NO. 07-35- KSF**

**JOYCE J. CORUM,** Executrix of the
Estate of Charles H. Corum                                                                                 **PLAINTIFF**

VS.

**HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY**                                                                                    **DEFENDANT**

**OPINION AND ORDER**

\* \* \* \* \* \* \*

This matter is before the Court on Plaintiff's Motion for Judgment Reversing Administrative Decision [DE #20]; the issues having been fully briefed, it is ripe for consideration. The question is whether Hartford Life and Accident Insurance Company ("Hartford") acted arbitrarily and capriciously when it made an administrative determination that the estate of Charles Corum was not entitled to accidental death benefits under the terms of his ERISA policy.

**I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The essential facts in this case are not in dispute. Hartford issued Accidental Death and Dismemberment Policy No. ADD-9922 ("Policy") to the AFL-CIO Mutual Benefit Fund, and Charles Corum ("Corum") was a Covered Person under the Policy. [DE #21, p. 2; Administrative Record ("AR") at "AR -175" through "AR-215"]. The Policy defined "Injury" as:

> bodily injury resulting directly from accident and independently of all other causes....
> Loss resulting from: a) sickness or disease, except a pus-forming infection which occurs through an accidental wound; or b) medical or surgical treatment of a sickness or disease; is not considered as resulting from Injury.

[AR 186].

Corum entered St. Joseph Hospital on March 4, 2005 for a catheterization procedure on two coronary arteries. His cardiologist found occlusions of the Left Anterior Descending (LAD) artery at its junction with a diagonal branch and used a Rotablator bur to remove the lesion. When he attempted to remove the bur, he reported:

> Angiography revealed very poor flow in the LAD. Attempts were made to withdraw the Rotablator bur through the guide using DynaGlide. This was complicated by tangling of the wire most likely due to wire rotation resulting from DynaGlide. This occurred despite the fact that the Roto clip was placed on the wire at all times.

AR 113-114. Following removal of the Rotablator, three stents were placed in the LAD to improve blood flow, but blood flow continued to deteriorate. Corum was transferred to the operating room for emergent salvage coronary artery bypass grafting. *Id.*; AR 83-84. His condition did not improve, however, and he passed away the morning of March 6, 2005. AR 83-84.

Hartford spins these facts differently. It says: "He was admitted to St. Joseph Hospital in Lexington, Kentucky on March 4, 2005. There he underwent catheter-based intervention following emergent salvaged coronary artery bypass grafting." [DE #21, p. 2]. As the source for these facts, Hartford cites its denial letter and the medical report *after* the laceration of the artery. *Id.*

Corum's widow filed a claim with Hartford for Accidental Death benefits, which was denied because "[i]t has been established that Mr. Corum's death was due to Multi-organ failure, Cardiogenic shock, Coronary artery disease, and Myocardial infarction." AR 35-37. The Death Certificate contains this information. AR 68. Accordingly, Hartford concluded that Corum's death was "due to sickness or disease or medical or surgical treatment of a sickness or disease." *Id.*

Counsel appealed the decision and advised that a lawsuit was pending in state court to determine whether Corum's death was caused by medical negligence or product failure. AR 9-10. He stated that "medical expert evidence will clearly establish that death was not due to the progression of Mr. Corum's underlying coronary artery disease." He advised that use of the Rotablator instead of bypass surgery under the circumstances was medical negligence, and that the malfunctioning Rotablator resulted in a large dissection of Corum's LAD. AR 9-10. He asked that the final decision on the insurance claim be held in abeyance pending the outcome of the underlying litigation. Hartford refused the request and issued a final denial on October 24, 2006, stating that under either outcome, Corum's "death resulted from sickness or disease; a Loss expressly excluded from coverage under this Policy." AR 5.

Plaintiff filed this action against Hartford in Fayette Circuit Court. Hartford removed the case to this Court based upon diversity and federal question jurisdiction under ERISA. Plaintiff claims that death as a result of medical malpractice and death resulting from a malfunctioning Rotablator are both "accidental deaths" such that Corum's estate is entitled to payment under the

Policy. [DE #20, p. 3]. She argues that Corum did not die from coronary artery disease [DE #20, p. 7]. She strenuously criticizes Hartford's claim that death "was caused by or resulted from complications of a number of very serious medical conditions including multi-organ failure, coronary artery disease (CAD) acute myocardial infarction (MI) and cardiogenic shock," since these cited conditions were "the end result of the destruction of the LAD." *Id.* She argues that Hartford's broad interpretation of an excluded loss resulting from "medical or surgical treatment of a sickness or disease" would bar a claim where death was caused by a head injury from falling off the operating table. *Id*. at 3. Likewise, she says its interpretation of "accident and independently of all other causes" would preclude coverage if death resulted from a driver running a red light and colliding with an ambulance transporting an insured. *Id.* at 2. Plaintiff notes that Hartford's position would lead to the conclusion that Corum "cannot die of an accident" because he was involved in treatment for coronary artery disease. *Id.* at 3. Accordingly, Plaintiff argues the denial of benefits was arbitrary and capricious on the merits. *Id.* at 4-8.

Hartford responds that its conclusion "that Mr. Corum's death from either the disease or attempted treatment thereof is not a covered loss is supported by a reasoned explanation, and therefore must not be disturbed under the deferential review standard applicable here." [DE #21, p. 2]. Hartford argues it is undisputed that Corum died "while being treated for coronary artery disease." *Id.* It rejects Plaintiff's argument that medical negligence or equipment failure is an Injury "notwithstanding the fact that both occurred during the course of treatment for coronary artery disease." *Id.* at 4. Hartford claims the definition of "Injury" in the Policy is such that "all risk from sickness or disease, including the treatment of it, whether medical or surgical, is not covered." *Id.* at 6. Hartford distinguishes death due to a ceiling collapse while in the hospital for treatment as having only a "coincidental" connection to medical treatment and, therefore, being an accidental death. *Id.* n. 1 (citing *Swisher-Sherman v. Provident Life & Ins. Co.*, 37 F.3d 1500 *2 (6th Cir. 1994) and *Senkier v. Hartford Life & Accident Ins. Co.*, 948 F.2d 1050 (7th Cir. 1991)). Hartford applies a "but for" test to say Corum would not have been subjected to medical negligence or equipment failure except for his illness and, thus, his death was not independent of all other causes. *Id.* at 6-7.

Hartford further relies on *Miller v. The Hartford Life Ins. Co.*, 348 F.Supp.2d 815 (E.D. Mich. 2004), *Swisher-Sherman*, *Pickard v. Transamerica Occidental Life Ins. Co.*, 663 F. Supp. 126 (E.D. Mich. 1987), and cases from other jurisdictions holding that medical negligence is not an "accident" under similar policies. *Id.* at 7-8. Hartford notes that *Miller* upheld the denial of death benefits on the additional ground that the "sickness and disease" and "medical or surgical treatment" limitations applied. *Id.* at 9.

Regarding the claim of equipment failure, Hartford argues that it is a known and accepted risk of medical treatment and can only occur during treatment for a sickness or disease, thus removing it from the meaning of accident. It also says the limitation that the injury be independent of all other causes applies here to exclude coverage. *Id.* at 11.

Plaintiff replied that an accident can occur during medical treatment, such as the operating room ceiling falling. Hartford's "but for" test would exclude this accident from coverage. Plaintiff urges that the Policy is ambiguous and must mean the exclusion is for a "known risk of such treatment." She notes Hartford's reliance on the consent form and risks associated with surgery, and she counters that malpractice and product failure are not included in the consent form. [DE #22, pp. 1-2]. Plaintiff distinguishes *Swisher-Sherman* as involving much broader policy language regarding a loss directly or "indirectly" resulting from treatment. She distinguishes *Senkier* because the court described the migration of a catheter was one of the "standard complications of standard medical treatments." *Id.* at 3-4. Plaintiff takes issue with Hartford's position that malpractice and failure of a product are "components" of medical treatment; she claims that manufacturers and doctors would disagree. She also distinguishes Hartford's equipment failure cases as involving either known risks or not involving equipment failure at all. *Id.* at 5.

## II.   ANALYSIS

### A.   The Record

A district court's review of the decision of the Plan Administrator is "confined to the record that was before the Plan Administrator." *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609, 615 (6th Cir. 1998). *See also Cooper v. Life Ins. Co. of North America*, 486 F.3d 157, 171 (6th Cir. 2007) ("The court is to conduct its review 'based solely upon the administrative record'").

4

**B.     Applicable Law**

Federal common law applies to benefit claims under ERISA. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56 (1987); *Criss v. Hartford Accident & Indemnity Co.*, 963 F.2d 373, 1992 WL 113370 *3 (6th Cir. 1991) (unpublished).

**C.     Standard of Review**

The Policy gives Hartford discretion to determine eligibility for benefits and to interpret the Policy. It provides: "We have full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of this Policy." [AR-180; Policy, p. 6]. Accordingly, the parties agree that the appropriate standard for review of this administrative decision is an arbitrary and capricious standard under *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989), as interpreted and applied by the United States Court of Appeals for the Sixth Circuit. [DE# 18]. "The administrator's decision must be upheld if 'it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence.'" *Whitaker v. Hartford Life and Accident Insurance Co.*, 404 F.3d 947, 949 (6th Cir. 2005). "Under this deferential 'arbitrary and capricious' standard, we will uphold a benefit determination if it is 'rational in light of the plan's provisions.'" *University Hospitals of Cleveland v. Emerson Electric Co.*, 202 F.3d 839, 846 (6th Cir. 2000) (quoting *Yeager v. Reliance Standard Life Ins. Co.,* 88 F.3d 376, 381 (6th Cir. 1996)).

**D.     Whether Hartford's Denial of Accidental Death Benefits Was Arbitrary and Capricious**

Hartford bases its denial of benefits on two separate provisions of the policy: 1) death was not "the result of bodily injury caused by an accident, directly and independently of all other causes"; and 2) death was the result of "sickness or disease, or the medical or surgical treatment of sickness or disease." AR 5, 7. Hartford claims the plan sponsor in this case chose a policy defined so as to avoid "all risk from sickness or disease, including the treatment of it, whether medical or surgical." [DE #21, pp. 5-6]. It relies on the plain language of the Policy and asserts that the benefits were rationally denied.

    1.  Interpretation of Accident, Directly and Independently of All Other Causes

  The Sixth Circuit recently noted that "the definition of the term 'accident' has been heavily litigated throughout history" and cited numerous ERISA cases involving various fact patterns. *Jones v. Metropolitan Life Inc. Co.*, 385 F.3d 654, 662-664 (6th Cir. 2004). In interpreting a Personal Accident Insurance policy under ERISA, the court held that "federal common law – from pre-*Erie* diversity cases to present day ERISA cases – focuses upon the expectations and intentions of the insured." *Id.* at 664. Plaintiff Jones tore her medial meniscus when she bent down and squatted at work. The court concluded that "[b]ecause Jones presented evidence that her knee injury was neither subjectively expected nor objectively foreseeable, Jones has presented evidence that she suffered an accidental injury." *Id.* at 665. Even if Corum's death qualified as an accident under this definition, however, it would need to be independent of all other causes, as Hartford also distinguished it from other accidental deaths on this basis. [DE #21, p. 7].

  The Eleventh Circuit recently addressed the question of first impression: "whether, and to what extent, language in an ERISA policy may preclude recovery for accidental injury where some preexisting condition was a contributing factor." *Dixon v. Life Ins. Co. of North America*, 389 F.3d 1179, 1183 (11th Cir. 2004). Dixon's car ran off the road and rolled over into an embankment, but the cause of his death was heart failure. A witness saw a pickup truck run the car off the road. There was no evidence of external injury to Dixon. Mrs. Dixon argued that the policy was ambiguous and that the phrase "from no other causes" must mean only other "direct" causes. Under her interpretation, if the auto accident was the "but for" cause of Mr. Dixon's death, she would be entitled to accidental death benefits. *Id.* at 1182. The court held that, even if the auto accident triggered the heart attack, Dixon's heart condition "substantially contributed" to his death, precluding recovery of accidental benefits.

  In reaching its decision, the *Dixon* court discussed the split in the circuits in interpreting "independently of all other causes" or similar language. *Id.* at 1183-84. First, it considered the decisions of the Tenth and Sixth Circuits. The Tenth Circuit held that the words "directly and independently of all other causes" were not ambiguous. *Pirkheim v. First Unum Life Ins.*, 229 F.3d 1008, 1010 (10th Cir. 2000). In *Pirkheim*, a child died when the battery in his pacemaker was depleted, resulting in his suffering cardiac arrhythmia. *Id.* at 1008. The court agreed that this was

6

an "accidental bodily injury," but held that it did not occur "directly and independently of all other causes." *Id.* at 1010-11. The child's pre-existing cardiac arrhythmia contributed toward his death. *Id.* at 1011.

The Sixth Circuit reached a similar result in *Criss v. Hartford Accident & Indem. Co.*, 963 F.2d 373, 1992 WL 113370 (6th Cir. 1991) (unpublished) where the insured was injured in an auto accident and went into cardiac arrest during the third day of his hospitalization. The evidence was that he likely died from a combination of his auto accident injuries and heart disease. In a *de novo* review, the court said:

> These policies specifically exclude from coverage any loss resulting from sickness or disease. Their being no doubt that Mr. Criss's death occurred from a combination of the underlying heart disease and injuries sustained in the collision, the question of which one of these two factors triggered the fatal heart attack is immaterial. Clearly, one of the factors causing the loss was the heart disease, which the policy excluded from coverage.

*Dixon,* 389 F.3d at 1183 (quoting *Criss* at \*6). "Because his death was at least partially due to his pre-existing heart condition, the Sixth Circuit held that the unambiguous language in the policy precluded recovery by his beneficiary." *Id. See also Lingerfelt v. Nuclear Fuel Services, Inc.*, 924 F.2d 1058 (Table), 1991 WL 11615 (6th Cir. 1991) (benefits denied when the "proof shows that the plaintiff's severe and painful degenerative disc disease and arthritis combined and concurred with any injury he may have sustained in October of 1987").

The Fourth Circuit took a slightly different approach and held that "a pre-existing infirmity or disease is not to be considered as a cause unless it substantially contributed to the disability or loss." *Adkins v. Reliance Standard Life Ins. Co.*, 917 F.2d 794, 797 (4th Cir. 1990).[1] The Ninth Circuit agreed with *Adkins* if the restrictive language is conspicuous. *McClure v. Life Ins. Co. of North America*, 84 F.3d 1129, 1136 (9th Cir. 1996) ("[W]e hold that if the exclusionary language here in question is conspicuous, it would bar recovery if a preexisting condition substantially contributed to the disability. This could result in a denial of recovery even though the claimed injury was the predominant or proximate cause of the disability."). The Eleventh Circuit adopted the *Adkins* test and agreed with the Fourth Circuit that an "overly strict interpretation of 'directly and

---

[1] Interestingly, in another unpublished opinion, the Sixth Circuit adopted the construction in *Adkins* when reviewing a denial of benefits *de novo*. *Tolley v. Commercial Life Ins. Co.*, 14 F.3d 602 (Table), 1993 WL 524284 (6th Cir. 1993).

7

from no other causes' would provide ... coverage only where the insured was in perfect health at the time of an accident." *Dixon*, 389 F.3d at 1184.

These cases illustrate that "independently of all other causes" means the pre-existing condition was a contributing cause or substantial contributing cause of death. Hartford's authorities of *Sangster v. Metropolitan Life Ins. Co.*, 54 F. Supp.2d 708 (E.D. Mich. 1999) and *Miller* are consistent with these cases. In *Sangster*, death was caused by both a heart attack and an auto accident. [DE #21, p. 11]. In *Miller*, the court said: "the death of Mrs. Miller was caused by an underlying condition." *Miller*, 348 F. Supp.2d at 822.

In record in the present case is not as clear that Corum's pre-existing coronary artery disease was a contributing cause in his death. The medical record shows that Corum's artery was lacerated. AR 113-114. However, Hartford has some evidentiary support for its position in the Death Certificate. Under the deferential standard applicable here, "[w]hen it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Spangler v. Lockheed Martin Energy Systems*, 313 F.3d 356, 361 (6th Cir. 2002) (quoting *Davis v. Kentucky Finance Cos. Retirement Plan*, 887 F.2d 689, 693 (6th Cir. 1989)). Accordingly, Hartford's denial of benefits is affirmed on this ground.

2.   <u>Interpretation of Medical or Surgical Treatment</u>

The Seventh Circuit interpreted "accident" in the context of an ERISA accidental death policy in *Senkier v. Hartford Life & Accident Ins. Co*, 948 F.2d 1050 (7th Cir. 1991). That policy also excluded "sickness or disease" and "medical or surgical treatment of a sickness or disease." *Id.* at 1051  While Senkier was being treated for Crohn's Disease, a catheter inserted for intravenous feeding became detached and punctured her heart, causing death. The court held that "a policy of accident insurance does not reach iatrogenic injuries, that is, injuries resulting from medical treatment." *Id.* Citing a number of mishaps that might occur during medical treatment, the court said: "All these injuries are accidental in the sense of unintended and infrequent. But they are not 'accidents' as the term is used in insurance policies for accidental injuries." *Id.* at 1052.

In *Swisher-Sherman v. Provident Life & Accident Ins. Co.*, 37 F.3d 1500, 1994 WL 562050 (6th Cir. 1994)(unpublished), the court interpreted a policy that excluded "loss directly or indirectly result[ing] from: ... Bodily or mental infirmity, disease of any kind, or medical or surgical treatment

8

for any such infirmity or disease." *Id.* at *1. Swisher was prescribed a heart medication, but died after ingesting the different drug that was erroneously dispensed to him. The court said:

> Every act of medical malpractice is to some extent an accident, if one equates "accident" with "unintended," because it is outside the course of the *intended* medical treatment. But the exclusion here focuses exclusively on the relationship aspect of the injury rather than its volitional component. To state the obvious, such *medical* mishaps can only occur during the course of treatment; and that's all the exclusionary provision here cares about.

*Id.* at *2. The court held that the exclusion was unambiguous and precluded plaintiff's claim for accidental death benefits. *Id.* at *3.

The Sixth Circuit cited *Senkier's* example of the ceiling caving in during surgery and quoted its rationale that coverage would be available because the "cause of death would be only adventitiously connected to the medical treatment." *Id.* at *2 (quoting *Senkier*, 948 F.2d at 1054). The Sixth Circuit also relied on several cases interpreting analogous exclusions outside the ERISA context, such as *"Whetsell v. Mutual Life Ins. Co.*, 669 F.2d 955, 957 (4th Cir. 1982) (claimant not entitled to additional benefits for death resulting from an infected I.V. needle; although use of infected needle was an accident, it occurred as part of medical treatment)"; "*Pickard v. Transamerica Occidental Life Ins. Co.*, 663 F. Supp. 126, 127 (E.D. Mich. 1987) (death due to drinking of wrong solution in preparation for colonoscopy was the type of medically related mishap that exclusion in accidental death benefit policy for loss resulting from medical treatment was intended to cover)"; and "*Reid v. Aetna Life Ins. Co.*, 440 F. Supp. 1182, 1183-84 (S.D. Ill. 1977) (accidental injection of lethal drug was direct consequence of medical treatment and therefore barred by exception in accidental death policy for death caused by medical and surgical treatments), *aff'd*, 588 F.2d 835 (7th Cir. 1978)."

Most recently within the Sixth Circuit, the exclusion was interpreted in *Miller v. The Hartford Life Ins. Co.*, 348 F. Supp. 2d 815 (E.D. Mich. 2004), where the patient died from complications of a procedure to remove a gallstone. When seeking accidental death benefits, Miller's husband argued medical negligence was an accident, but the court rejected the claim. First, it said "[w]hen interpreting exclusionary language in a policy similar to the language here, courts routinely hold that medical malpractice is not an accident." *Id.* at 818. *See also* Jay M. Zitter, *What Constitutes Medical or Surgical Treatment, or the Like, Within Exclusionary Clause of Accident Policy or Accidental-Death Feature of Life Policy*, 56 A.L.R.5th 471.

9

> At first blush, it would seem that injuries resulting from malpractice would be clearly covered as accidental injuries and would not be excepted as "medical treatment" since, by definition, there was an absence of proper "treatment." Nevertheless, a large number of cases have found that injuries as a result of malpractice are in fact within the exception (§ 9), with the courts often relying on the clear language of the policy, or reasoning that to exclude malpractice would render the clause meaningless.

*Id.* at § 2(a). Accordingly, the *Miller* court held that the injuries "from alleged medical malpractice were not accidents under the policy." *Id.* at 819. It continued: "Supposing that surgical error caused the peritonitis, the cases above demonstrate that medical malpractice does not prevent the application of an exclusion for medical or surgical treatment." *Id.* at 824.

Hartford's "but for" test proves too much, as it would deny benefits when the operating room ceiling fell, a car hit the ambulance, and the like. However, the foregoing cases illustrate a substantial body of law holding that medical malpractice is not an accident for purposes of an accidental death or injury policy, and that the exclusion for medical or surgical treatment is applicable. Likewise, it is "rational in light of the plan's provisions" to conclude that death caused by a malfunctioning medical product used in the treatment, such as the pacemaker in *Pirkheim v. First Unum Life Ins.*, 229 F.3d 1008, 1010 (10th Cir. 2000), is excluded under the medical or surgical treatment exclusion. *Spangler v. Lockheed Martin Energy Systems,* 313 F.3d 356, 361 (6th Cir. 2002) (quoting *Daniel v. Eaton Corp.*, 839 F.2d 263, 267 (6th Cir. 1998).

Accordingly, the Plan Administrator's denial of benefits is affirmed.

### III.     CONCLUSION

The Court, being otherwise fully and sufficiently advised, **HEREBY ORDERS** that Plaintiff's Motion for Judgment Reversing Administrative Decision [DE #20] is **DENIED**. A Judgment in conformity with the Opinion will be entered contemporaneously.

This March 24, 2008.



Signed By:

*Karl S. Forester*  KSF

**United States Senior Judge**